## 20938

HARTFORD ACCIDENT AND INDEMNITY COMPANY, Respondent, v. John W. LINDSAY, Chief Insurance Commissioner, Appellant. In re Appeal by HARTFORD ACCIDENT AND INDEMNITY COMPANY from an Order of the Chief Insurance Commissioner.

(254 S. E. (2d) 301)

*Thomas C. Salane* and *E. W. Laney, III,* of *Turner, Padget, Graham & Laney,* Columbia, *for appellant.*

*Heyward McDonald* of *Rogers, McDonald, McKenzie, Fuller & Rubin,* Columbia, *for respondent.*

April 17, 1979.

*Per Curiam:*

The circuit court reversed an order of the Chief Insurance Commissioner and the ruling of the Governing Board of the South Carolina Reinsurance Facility. The effect of his order was to rule that the Insurance Commissioner erred in holding that Hartford Accident and Indemnity Company used excessively and unreasonably its right to cede premiums on South Carolina automobile insurance as reported by its most recently filed annual statement. The Insurance Commissioner has appealed.

Three questions are set forth in the brief of the Insurance Commissioner. Questions 1 and 2 are fully set forth in the judge's order and properly resolved. His order, with deletions, will be printed as the directive of this court.

The third question raises an issue of estoppel, which is found to be without merit and is disposed of under our Rule 23.

The order of Circuit Judge Walter Bristow is as follows:

## ORDER OF CIRCUIT COURT

This appeal by Hartford Accident and Indemnity Company, Appellant, is from an order of John W. Lindsay, Chief Insurance Commissioner, dated April 15, 1977, confirming a decision of the Governing Board of the South Carolina Reinsurance Facility by which the appellant was assessed a penalty of $196,400 for alleged excessive cessions to the Facility during the 1975-76 Facility fiscal year. The appeal is taken under the provisions of Section 38-3-210 of the South Carolina Code of Laws of 1976. The matter is before me upon the certified transcript of record of the proceedings below as well as a supplemental stipulation of facts.

In 1974 the General Assembly of the State of South Carolina enacted the South Carolina Automobile Reparation Reform Act of 1974, Act 1177, which effected a sweeping reform of automobile insurance law in this state. Establishing a mandate of coverage for all automobile insurance risks, Act 1177 required all insurers to accept and to write any and all risks as a condition for doing business. Recognizing the added burden thereby imposed upon insurers, the legislature also created the South Carolina Reinsurance Facility, a nonprofit, unincorporated legal entity designed to reinsure risks ceded to it by members. Foreseeing the potential for abuse of the Facility, and in order to prevent insurers from taking unfair advantage of others by ceding more than a fair share of their risks, the Legislature clearly defined what would constitute prohibited overuse of the cession privilege by the language of Section 38-37-950, the first paragraph of which states:

*"Unreasonable or excessive use of Facility by insurers.* It is the intent of Articles 1 to 15 of this Chapter that the Facility shall not be excessively nor unreasonably utilized by automobile insurance insurers for unfairly competitive purposes or for purposes of unfairly discriminating against certain classes or types of automobile insurance risks having the same or similar objective risk characteristics as other

risks in the same class under the rating plan for the classification of risks promulgated by the Bureau; nor for the purpose of discriminating against such risks or any risks in certain rating territories. Every such unreasonable or excessive utilization of the Facility shall be prohibited by the Commission."

After stating in the first paragraph of the section that unreasonable or excessive use of the facility for purposes of unfair competition or discrimination should be prohibited by the Commission, the Legislature then went further and set out a guide line to show when it considered that a *prima facie* showing of such unreasonable or excessive use had been made. The second paragraph of Section 38-37-950 reads as follows:

"A *prima facie* case of excessive or unreasonable utilization shall be established upon a showing that an automobile insurance insurer or a group of such insurers under the same management has ceded or is about to cede more than thirty-five percent [35%] of total direct risk premiums on South Carolina automobile insurance as reported in the most recently filed annual statements(s) of such insurer or group."

Pursuant to the statutory mandate (Code Section 38-37-730) the Reinsurance Facility adopted a plan of operation approved by the Insurance Commission. As stated by the Chief Insurance Commissioner in his order, in its first plan of operation the Facility adopted a limitation of 35% on the ceding of premiums based "on total direct written premiums on South Carolina Motor Vehicle Insurance as reported in the last annual statement of such member . . ."

On September 24, 1975, the Governing Board of the Facility amended its plan of operation so as to delete the requirement that the 35% limitation be based upon the "last annual statement," and provided that:

"No member may cede more than 35% of its total current direct written premiums on South Carolina Motor Vehicle Insurance. . . ."

It is stipulated and agreed that by the close of the 1975-76 fiscal year, Hartford had exceeded the changed cession premium limitation by $97,838.00, representing 37.58% of all its eligible business for the fiscal year based on the amended formula of "current direct written premiums." It is also stipulated that if the cession limitation were to be based on the previous year's business as reflected in the 1975 annual statement filed with the Chief Insurance Commissioner, Hartford would have ceded less than 35% of its eligible business.

Chapter 02, Rule 5, of the South Carolina Reinsurance Facility Manual provides that companies who exceed the 35% cession limitation will be required to participate in the losses of the Facility to the extent of $2.00 for each premium dollar of overcession. This is in effect a fine or penalty which is imposed automatically upon the finding of an amount of cession over 35%. No finding of unfair competition, discrimination, excessiveness, or unreasonableness is required by the Manual for this fine or penalty to be imposed.

Pursuant to this rule, Hartford was assessed to participate in the losses of the Facility to the additional extent of $196,-400.00. From this assessment Hartford appealed to the Board of Governors of the Facility, which denied the appeal at its meeting of January 26, 1977. Appeal was then taken to the Insurance Commission, which appeal was denied by order of the Chief Insurance Commissioner dated April 15, 1977.

At the outset, this Court is faced with a question of the interpretation of the statute. Ignoring for the moment such questions as to whether a penalty is a prohibition and whether and to what extent a *prima facie* case can be rebutted, I first consider what was intended by the Legislature in the second paragraph of Section 38-37-950 in limiting cessions to 35%

of premiums "as reported in the most recently filed annual statement(s) of such insurer or group."

I am not at liberty to discard these words from the ██ statute. Full effect must be given to each section of a statute, giving words their plain meaning, and, in the absence of ambiguity, words must not be added or taken away. *Home Building & Loan Ass'n v. City of Spartanburg,* 185 S. C. 313, 194 S. E. 139 (1938). While it is not conclusive, it is proper in construing a statute to consider legislation dealing with the same subject matter as an aid in construction. *Southern Ry. Co. v. S. C. State Highway Dept.,* 237 S. C. 75, 115 S. E. (2d) 685 (1960).

Code Section 38-5-1300 requires that every insurance company doing business in South Carolina file a financial statement on or before the first day of March of each year. This statement is commonly referred to as the annual statement, and it would normally reflect the premium income of a company for an annual period. This statement can be used to determine the direct written automobile premiums for the preceding year and the 35% figure derived therefrom. Prior to the September 1975 amendment to the plan of operation, this was the method used by the Facility. And indeed the minutes of the meeting of the Board of Governors of July 31, 1975, indicate that in order that there be no misunderstanding as to when the proposed change in method should take place, it is specifically stated therein that "(i)t was understood that the minutes of this meeting would show that the basis of Cession Limitation for fiscal year October 1, 1974, to September 30, 1975, would be the 1974 Annual Statement.

Generally, in statutes regulating insurance in South Carolina, when the words "annual statement" are used, they refer to the annual statement required by Code Section 38-5-1300 to be filed annually with the Commissioner. Thus we find in Section 38-5-1310 reference to the "Last annual state-

ment," in 38-5-1380 "its annual or other statement required by law," in 38-5-630 "1970 annual statement," in 38-5-640 "all annual statements for the year 1962," in 38-5-770(1)-(a)(iii) "the annual statement of the reinsurer" and "each such annual statement," in 38-5-780 "any annual or other statement," and in 38-5-1030 "insurer's annual statement." This list does not purport to be exhaustive, merely indicative of the common use of the term in insurance legislation.

I therefore conclude that the determination of a *prima facie* violation of Section 38-37-950 must be based upon a cession of more than 35% of the total direct risk premiums on South Carolina automobile insurance *as reported on the most recently filed annual statement of such insurer,* and that this reference to the "most recently filed annual statement" means the annual statement required to be filed by Code Section 38-5-1300.

It is therefore equally apparent that the 35% limitation adopted by the Facility cannot be used to determine a *prima facie* violation of Section 38-37-950.

The Court therefore holds that the statute requires the use of the annual statement of Section 38-5-1300 to establish whether or not there has been a *prima facie* violation of Section 38-37-950. It then follows that the Facility had no authority to establish another *prima facie* test based on current written premiums. The appellant was therefore not *prima facie* in violation of the statute prohibiting overcessions.

The further question is then presented as to whether or not appellant was in fact guilty of "unreasonable or excessive use . . . for unfairly competitive purposes . . . or for purposes of unfair discrimination" as proscribed by the Act. In that regard there is no such finding by the Facility, by the Board of Governors of the Facility, by the Insurance Commission, or by the April 15, 1977, order of the Chief Insurance Commissioner from which this appeal

was taken. Commissioner Lindsay refers in his order to a lack of prudent underwriting and management by appellant but nowhere in the transcript of record certified by the Commission to this Court or in the stipulation of facts is there any factual finding by anyone that appellant had unreasonably or excessively used the Facility for unfairly competitive purposes or for purposes of unfairly discriminating against certain classes or types of automobile insurance risks. To the contrary the transcript contains in large part rebuttal of any such inference of wrongdoing on the part of appellant. Even if it might be contended that the imposition of the penalty against Hartford was an implicit finding by the Facility or the Commission of such unreasonable or excessive use for unfair competitive purposes or for unfair discrimination, after a thorough review of the record, I conclude that such an implicit finding would be unsupported by any substantial evidence, would be clearly erroneous in view of the reliable, probative and substantial evidence in the whole record, and therefore should be reversed.

Having concluded that the Facility applied an unauthorized test to find Hartford in *prima facie* violation of the Act in violation of the statutory provisions creating the Facility, and that there is no showing otherwise that Hartford was in fact in violation of the act, it follows that the action of the Facility was in excess of its statutory authority, that the decision of the Chief Insurance Commissioner affirming that action was affected by error of law, and Hartford is entitled to relief from the penalty imposed upon it.

The foregoing holding makes it unnecessary to consider the additional grounds of appeal concerning the nature of the penalty and the Facility's authority to impose it in this case.

IT IS THEREFORE, ORDERED:

1. That the order of the Chief Insurance Commissioner dated April 15, 1977, be, and it is hereby, reversed and set aside.

2. That the Governing Board of the South Carolina Reinsurance Facility is ordered to take appropriate steps to refund to appellant such penalty as may have been assessed.