21791

FIDELITY AND CASUALTY INSURANCE COMPANY OF NEW YORK, Respondent, v. NATIONWIDE INSURANCE COMPANY, Pennsylvania National Mutual Casualty Insurance Company, Concord General Mutual Insurance Company, John Ellis Merriman, Administrator of the Estate of Harry K. Watson, Jr., Mary Parson Gillespie, Administratrix of the Estate of Edward Parson, Jr., Larry Cornelius Moore, and Margaret Watson, Defendants, of whom Nationwide Insurance Company and Pennsylvania National Mutual Casualty Insurance Company are Appellants.

(295 S. E. (2d) 783)

*R. Bruce Shaw* and *Thornwell F. Sowell, III, Nelson, Mullins, Grier & Scarborough,* Columbia, *for appellants.*

*Saunders M. Bridges, Jr.* of *Bridges, Bridges & Orr,* Florence, *for respondent.*

September 28, 1982.

NESS, Justice:

This is an automobile insurance case. The appellant Nationwide asserts the trial court erred in granting declaratory judgment for respondent Fidelity. We disagree and affirm.

Edward Parson was fatally injured in an automobile accident on September 14, 1975 while a passenger in a vehicle driven by Harry Watson. Parson had uninsured motorist insurance with Nationwide. The automobile driven by Watson had previously been insured under a policy issued by Fidelity with an expiration date of August 2, 1975. Despite notice of renewal, the policy expired approximately one month prior to the accident.

Appellant, Nationwide, sought recovery against Fidelity asserting Fidelity had not effectively terminated its policy since it failed to notify the South Carolina State Highway Department of the expiration of the policy pursuant to § 56-11-740, S. C. Code of Laws (1976), part of the Automobile Reparation Reform Act. Fidelity asserts the statute as written in 1975 did not require the insurer to give any notice in the case of expiration of a policy. We agree.

S. C. Code of Laws (1976), § 56-11-740, as originally enacted in October 1974 states in part:

> "When a motor vehicle is or becomes an uninsured motor vehicle, the *insured* shall give written notice ... to the Department of the cancellation or refusal to renew." (Emphasis added).

In 1977 the statute was amended to substitute the word "insurer" in lieu of the word "insured."

Appellant Nationwide argues the use of the word "insured" rather than the word "insurer" in the original enactment of

the statute is a typographical error so that Fidelity is liable for failing to notify the Department of Watson's refusal to renew. We disagree.

The word "insured" remained in the statute from October 1974 until 1977. Since the legislature took three years to remedy any alleged error and give notice to "insurers" of any requirements under the statute, there is not any basis to hold Fidelity liable for failing to fulfill these unknown or unclear requirements.

Appellant also contends the 1977 amended version of § 56-11-740 should be applied retroactively as a remedial act by the legislature.

However the language of the 1977 amendment to § 56-11-740 does not indicate an intention by the legislature to give the amendment retroactive effect. In the absence of a clear indication of such an intention, statutes will not be given retroactive effect. *Hyder v. Jones*, 271 S. C. 85, 245 S. E. (2d) 123 (1978). The trial court noted the disastrous consequences which would follow a retroactive application of the 1977 amendment:

> "To apply the amendment retroactively would automatically subject the plaintiff to liability for any accidents which occurred during the two years which passed between the lapse of the policy and the date of the amendment. The plaintiff's exposure, in terms of time, would be tripled, and this would be true of every policy which lapsed from the effective date of the original statute until the amendment was passed. Untold thousands of policies in this State, long since lapsed, destroyed and forgotten, would be in effect even today. Such a result would, to say the least, effect [sic] the vested right of [Fidelity] and other carriers. If such a result had been intended by the Legislature, then the Legislature would certainly have so stated in the amendment." (Tr. p. 14).

We agree with the trial court's reasoning and conclude the statute cannot be applied retroactively.

Appellant next asserts § 56-11-220 continues the policy in force because respondent failed to notify the Chief Highway Commissioner of the cancellation. We disagree.

That section provides in part:

"Every insurer writing automobile liability insurance in this State and every provider of other security approved and accepted by the Chief Highway Commissioner in lieu of such insurance shall immediately notify the Chief Highway Commissioner *of the lapse in termination* of any such insurance or security . . ." (Emphasis added).

Nothing in this statute specifically states that failure to notify as required continues the policy in effect. However, appellant argues the implied legislative intent was to continue the policy in force until the required notice is given, since the intent of the statute was to effect a compulsory scheme of liability coverage.

In construing a statute, it is proper to consider legislation dealing with the same subject matter. *Hartford Accident and Indemnity Company v. Lindsay*, 273 S. C. 79, 254 S. E. (2d) 301 (1979). An examination of § 56-9-20(7) reveals that appellant's construction of § 56-11-220 is not in accord with the legislative intent. While not directly applicable to this case, § 56-9-20(7)(h) is related to the statute at issue and provides:

"When an insurance carrier has *certified* a motor vehicle liability policy . . . *the insurance so certified shall not be cancelled or terminated until at least ten days after a notice of cancellation or termination . . .*" (Emphasis added).

The plain language of this statute makes clear that the policy shall remain in effect until the required notice is given. *United States Fidelity and Guaranty Company v. Security Fire and Indemnity Company*, 248 S. C. 307, 149 S. E. (2d) 647 (1966). The legislature could have worded § 56-11-220 to continue the policy in force until proper notification, yet it chose not to do so, indicating an intention to avoid that result.

Additionally, the legislature specifically delegated the authority to issue all necessary rules and regulations for enforcement of the act to the Chief Highway Commissioner. Section 56-11-80 S. C. Code of Laws (1976). An examination of the rules and regulations issued by the Commissioner discloses nothing which gives § 56-11-220 the effect urged by appellants. We conclude this statute does not continue the policy in effect.

Appellant's remaining exceptions are without merit and dismissed pursuant to Rule 23 of the Rules of Practice of this Court. The order of the trial court is affirmed.

Affirmed.

LITTLEJOHN, GREGORY and HARWELL, JJ., concur.

LEWIS, C. J., dissents.

LEWIS, Chief Justice (dissenting):

There can be no doubt that the General Assembly, by the enactment of the Automobile Reparation Reform Act of 1974, intended to effect a system of compulsory automobile liability insurance.

While I agree with the majority that Code Section 56-11-740 did not require that the insurer give any notice in the case of the expiration of the policy, Section 56-11-220 *did* require the insurer to give such notice. The pertinent portion of that section reads:

> Every *insurer* writing automobile liability insurance in this State and every provider of other security approved and accepted by the Chief Highway Commissioner in lieu of such insurance *shall* immediately notify the Chief Highway Commissioner of the lapse or termination of any such insurance or security.... (Emphasis added).

It is conceded that respondent gave no notice of the expiration of the policy to the Chief Highway Commissioner.

The Legislative intent to provide a system of compulsory automobile insurance can only be effected if automobile owners maintain continuous insurance coverage. The Legislature provided for enforcement of coverage requirements by providing in Section 56-11-220 as follows:

> Upon receipt of any such notice the Chief Highway Commissioner shall make a reasonable effort to notify the person that his certificate of registration has been suspended and shall recover the certificate from such person and the motor vehicle registration plates from the vehicle concerned.

Certainly, the notice requirements of Section 56-11-220 place a clear duty upon the insurer to give notice of the lapse

of insurance coverage so that the Chief Highway Commissioner can cancel the insured's license to operate the vehicle. The only reasonable conclusion is that the consequence of noncompliance by the insurer is a continuation of the coverage provided.

I find no reasonable basis for the conclusion by the majority that the provisions of Code Section 56-11-220, requiring the *insurer* to give notice, should be read out of the statute because the provisions of Code Section 56-11-740 also required that the *insured* give notice of the termination of the policy.

I would reverse the judgment and, therefore, dissent.