518 S.E.2d 608

**Lela PETERSON (Individually and as Administratrix of the Estate of Steve Tarver, Deceased), as Assignee of Margaret Webb Walker, Appellant,**

v.

**WEST AMERICAN INSURANCE COMPANY, Respondent.**

**No. 3003.**

Court of Appeals of South Carolina.

Submitted May 11, 1999.

Decided June 1, 1999.

Glenn V. Ohanesian, of Ohanesian & Ohanesian; and O. Fayrell Furr, Jr., of Furr & Henshaw, both of Myrtle Beach, for Appellant.

James D. Brice and Jennifer E. Johnsen, both of Gibbes, Gallivan, White & Boyd, of Greenville, for Respondent.

ANDERSON, Judge:

This is an insurance case involving the question whether automobile coverage was effectively cancelled by the policy-

holder in the absence of notice to the South Carolina Department of Highways and Public Transportation (the Highway Department). Lela Peterson's son, Steve Tarver, was killed while riding in a car driven by E. Michael Galloway. The car belonged to Margaret Webb Walker. Peterson sought actual and punitive damages from West American Insurance Company, Walker's insurance carrier. The circuit court granted West American summary judgment, finding Walker had voluntarily cancelled the insurance policy prior to the date of the automobile accident. Peterson appeals, arguing the cancellation was not effective in the absence of notice to the Highway Department. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

Walker obtained an automobile insurance policy on November 23, 1990 from West American through the Abercrombie Insurance Agency. The policy was for the stated six-month term of November 23, 1990 to May 23, 1991.

On or about November 27, 1990, Walker gave her car to Galloway, a neighbor, so that he could repair the car. Galloway took possession of the car and never returned. On December 12, 1990, Walker reported her car stolen to the Simpsonville Police Department. Walker spoke with an Abercrombie agent on February 15, 1991 and sought to cancel her policy. West American issued a cancellation notice and sent Walker a refund check on February 25, 1991. West American designated November 28, 1990 as the policy termination date on the notice. However, the Highway Department never received a Form FR–4, Notice of Cancellation of Policy.

On April 14, 1991, Galloway wrecked Walker's car in a single-car accident in Mississippi. Galloway, who had been drinking, lost control of the car and hit a tree. Steve Tarver, a passenger in the back seat of the car, died as a result of his injuries in the wreck.

Peterson, Tarver's mother, was appointed administratrix of Tarver's estate. Prior to the appointment, Peterson's attorney informed Walker of the wreck and sought information on

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Walker's insurance company. Walker referred the letter to West American. West American declined coverage, asserting Walker cancelled her policy prior to the accident. Thereafter, on several occasions West American suggested Walker retain personal counsel and advised her they would not provide her with a defense.

Peterson's attorney sought the limits of the policy from West American. West American continued to refuse liability, claiming Galloway stole the car and Walker cancelled the policy prior to the accident.

Peterson brought a wrongful death action against Galloway, alleging he drove the car in excess of 100 m.p.h. while intoxicated before crashing, and a negligent entrustment action against Walker. In 1993, the Mississippi circuit court awarded a default judgment against Walker and Galloway for $544,-350. South Carolina circuit court Judge McKellar enrolled the foreign judgment in South Carolina for the principal amount plus post-judgment interest of $105,231.07.

Walker assigned her claims against West American to Peterson on July 5, 1995. Peterson then sued West American for bad faith refusal to pay benefits. Peterson alleged West American failed to perform its duty to defend Walker under the terms of the policy, resulting in the default judgment; failed to properly cancel the policy under the law; and failed to pay benefits due under the policy. West American continued to refute liability, contending, among numerous defenses, that Walker properly cancelled the insurance policy prior to the accident.

West American and Peterson filed motions for summary judgment, which were heard by Judge Pyle. The circuit court granted summary judgment in favor of West American. The court found West American validly cancelled the insurance policy pursuant to Walker's request, and Peterson, who stood in the shoes of Walker, failed to establish the existence of a mutually binding contract. The circuit court subsequently denied Peterson's Rule 59, SCRCP motion. Peterson appeals.

## ISSUES

I. Did the court err in failing to find the insurance policy remained in effect because West American did not noti-

fy the Highway Department that Walker's policy had been cancelled?

II.  Did the court err in finding West American properly cancelled the policy in accordance with the relevant policy and statutory provisions?

III.  Did the court err in finding the insurance policy was not in effect at the time of the automobile accident since the alleged negligent entrustment occurred while the policy remained in effect?

## STANDARD OF REVIEW

A trial court should grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. *See also Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997).

An appellate court reviews the granting of summary judgment under the same standard applied by the trial court pursuant to Rule 56(c), SCRCP: Summary judgment is properly upheld when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Baughman v. American Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991). *See also* 5 Am.Jur.2d *Appellate Review* § 700 (1995) ("In reviewing a grant of summary judgment, the appellate court is limited to the evidence that was before the trial court and applies the same standard of review as did the trial court.").

Under Rule 56(c), SCRCP, the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Baughman*, 306 S.C. 101, 410 S.E.2d 537. Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. Rather, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. Rule 56(e), SCRCP; *SSI Med. Servs., Inc. v. Cox*, 301

S.C. 493, 392 S.E.2d 789 (1990); *NationsBank v. Scott Farm*, 320 S.C. 299, 465 S.E.2d 98 (Ct.App.1995).

In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997); *City of Columbia v. American Civil Liberties Union*, 323 S.C. 384, 475 S.E.2d 747 (1996).

## LAW/ANALYSIS

### I. Did the insurance policy remain in effect because West American failed to notify the Highway Department that Walker's policy was cancelled?

Peterson's first argument is two-fold: (a) whether §§ 56–10–240 and 56–10–40 of the South Carolina Code required West American to notify the Highway Department when Walker's policy was cancelled; and (b) if so, whether West American's failure to notify the Highway Department continued the policy in effect.

### A. Failure to notify Highway Department of voluntary cancellation.

■ We hold Walker's voluntary cancellation of her insurance policy absolved West American's responsibilities under §§ 56–10–240 and 56–10–40 because these provisions apply when the insurer cancels or refuses to renew a policy, not when the insured voluntarily cancels [2] a policy.

Section 56–10–240 provides in pertinent part:

(A) If, during the period for which it is licensed, a motor vehicle is or becomes an uninsured motor vehicle, then the vehicle owner immediately shall obtain insurance on the vehicle or within five days after the effective date of cancellation or expiration of his liability insurance policy surren-

---

**2.** "While both terms refer to the end of coverage under the policy, Cancellation refers to the termination of the policy prior to the end of the policy period, and Termination refers to the expiration of the policy by the lapse of the policy period." *United States Fidelity & Guar. Co. v. Security Fire & Indem. Co.*, 248 S.C. 307, 314, 149 S.E.2d 647, 650 (1966).

der the motor vehicle license plates and registration certificates issued for the motor vehicle. If five working days after the last day to pay an automobile liability insurance premium ... a motor vehicle is an uninsured motor vehicle, *the insurer* shall give written notice ... within ten days after the five-day period ends ... to the department of the cancellation or refusal to renew under the following circumstances:

(1) the lapse or termination of such insurance or security occurs within three months of issuance, provided that this subsection only applies to new policies, and not renewal or replacement policies; or

(2) the lapse or termination occurs after three months for a resident who fails one or more of the objective standards prescribed in Section 38–73–455.

(B) The department, in its discretion, may authorize *insurers to utilize alternative methods of providing notice of cancellation of or refusal to renew to the department.* The department may not reissue registration certificates and license plates for that vehicle until satisfactory evidence has been filed by the owner or *by the insurer who gave the cancellation or refusal to renew notice* to the department that the vehicle is insured.... The department shall give notice by first class mail of the cancellation or suspension of registration privileges to the vehicle owner at his last known address.

S.C.Code Ann. § 56–10–240 (Supp.1998) (emphasis added).

This provision explicitly references only an insurer's cancellation notice. The emphasized portion illustrates how the provision focuses on instances where the insurer cancels or refuses to renew a policy and provides no specific reference to an insured's decision to cancel. Thus, we find § 56–10–240 applicable when an insurer cancels or refuses to renew a policy, but not applicable where the insured voluntarily seeks to cancel an insurance policy.

Section 56–10–40 permits a similar inference. Section 56–10–40 provides in relevant part:

Every insurer writing automobile liability insurance in this State and every provider of other security approved and accepted by the director or his designee in lieu of such

insurance shall immediately notify the department of the lapse or termination of any such insurance or security issued to or provided for a resident of this State in the following circumstances:

> (1) the lapse or termination of such insurance or security occurs within three months of issuance provided that this subsection only applies to new policies, and not renewal or replacement policies; or

> (2) the lapse or termination occurs after three months for a resident who fails one or more of the objective standards prescribed in Section 38–73–455.

This notification must be in writing or magnetic media in a manner considered satisfactory to the department. *Upon receipt of any such notice the department shall make a reasonable effort to notify the person that his certificate of registration has been suspended and shall recover the certificate from such person and the motor vehicle registration plates from the vehicles concerned.*

S.C.Code Ann. § 56–10–40 (Supp.1998) (emphasis added).

The provision's first sentence explicitly limits its scope to insurers. The provision's emphasized portion implicitly assumes the insured lacks notice of a policy's cancellation until the Highway Department notifies the insured, thus implying the insurer, rather than the insured, cancelled the policy. Therefore, we find this provision's applicability also is limited to instances where the insurer, rather than the insured, cancels the policy.

Other statutory provisions imposing notice requirements when the insurer cancels a policy, but not where the insured cancels the policy, buttress our conclusion. *See, e.g., Fidelity & Cas. Ins. Co. v. Nationwide Ins. Co.,* 278 S.C. 332, 335, 295 S.E.2d 783, 785 (1982) (noting that "[i]n construing a statute, it is proper to consider legislation dealing with the same subject matter"). For example, § 38–77–120 provides:

> (a) No cancellation or refusal to renew by an insurer of a policy of automobile insurance is effective unless the insurer delivers or mails, to the named insured at the address shown in the policy, a written notice of the cancellation or refusal to renew.
> * * *

(b) Subsection (a) of this section does not apply if the:
* * *

    (2) named insured has demonstrated by some overt action to the insurer or its agent that he expressly intends that the policy be canceled or that it not be renewed.

S.C.Code Ann. § 38–77–120 (Supp.1998).[3]

This provision absolves an insurer's responsibility to issue notice when the insured cancels or refuses to renew a policy, in contrast to when the insurer takes such action and, thus, illustrates the different duties arising when the insured cancels a policy as opposed to when the insurer cancels the policy.

■ Therefore, we hold Walker's voluntary cancellation of her policy absolved West American's notice responsibilities under §§ 56–10–40 and 56–10–240.[4] Because Peterson, as Walker's assignee, assumes the same position as Walker, Peterson is also precluded from claiming West American failed to give proper notice. *Singletary v. Aetna Cas. & Sur. Co.,* 316 S.C. 199, 201–02, 447 S.E.2d 869, 870 (Ct.App.1994) (holding an assignee stands in the shoes of the assignor and can claim no higher rights than the assignor possessed at the time of the assignment).

## B. No continuation of policy in the absence of notice of cancellation.

■ Even assuming §§ 56–10–40 and 56–10–240 applied, Peterson's claim is without merit because West American's failure to comply with the notice requirements does not effectively continue the policy.

If § 56–10–40 or § 56–10–240 do apply, West American violated these provisions by failing to properly notify the Highway Department that Walker's policy terminated. *See* S.C.Code Ann. §§ 56–10–40 & –240 (Supp.1998); *United States Fidelity & Guar. Co. v. Security Fire & Indem. Co.* 248 S.C. 307, 313–14, 149 S.E.2d 647, 650 (1966) ("Statutory provi-

------

**3.** Our legislature amended this provision effective March 1, 1999. S.C.Code Ann. § 38–77–120(a) (Supp.1998).

**4.** We express no opinion on how the above analysis differs with a certified policy. *See* S.C.Code Ann. § 56–9–20(5)(h) (Supp.1998).

sions requiring notice for cancellation or termination of compulsory motor vehicle insurance are mandatory, must be strictly followed to effect a cancellation or termination of the policy, and must be construed so as to effect the statutory purpose of providing protection to the general public.").

However, even if required, West American's failure to properly notify the Highway Department would not continue the policy in effect. *See Fidelity & Cas. Ins. Co. v. Nationwide Ins. Co.*, 278 S.C. 332, 295 S.E.2d 783 (1982). In *Fidelity*, the South Carolina Supreme Court analyzed prior versions of § 56–10–40 [formerly § 56–11–220] and § 56–10–240 [formerly § 56–11–740]. The court held § 56–11–740 required the insured, rather than the insurer, to serve notice of the cancellation to the Highway Department because at the time the cause of action arose the statute required notice from the insured. The court noted the statute had since been amended to provide the insurer was to give notice to the Highway Department in the event of a cancellation of coverage. Next, the court held § 56–11–220 required notice of a cancellation, but did not continue the policy in effect when the insurer failed to properly notify the Highway Department absent an explicit statement providing for such effect. *Fidelity*, 278 S.C. at 334–35, 295 S.E.2d at 784–85 ("Nothing in this statute specifically states that failure to notify as required continues the policy in effect."). Neither of the current statutes, § 56–10–40 and § 56–10–240, provide for a policy's continuation if an insurer fails to give notice under the provisions.

Although Peterson contends *Fidelity* did not require notice under the former § 56–11–740 only because the statute then referenced notice by the "insured" rather than the "insurer," we hold the court's subsequent discussion regarding § 56–11–220, with nearly identical provisions to our current § 56–10–40, governs the case *sub judice.* Therefore, we hold that even if the statutory provisions applied to West American, failure to properly notify the Highway Department of the cancellation of Walker's insurance policy did not continue the policy in effect.

II. **Did the court err in finding the policy was properly cancelled in accordance with the relevant policy and statutory provisions?**

Peterson further contends Walker's attempt to cancel her policy was invalid because the policy and the correspond-

ing statutory provision prevent cancellation within sixty days of the policy's issuance. We disagree.

The relevant provision in Walker's insurance policy concerning cancellation of the policy states as follows:

During the first 60 days this policy is in effect, the policy may be cancelled only if:

a. a check or bank draft tendered for payment of premium is returned unpaid for insufficient funds or other reason by the financial institution; or

b. You furnish proof from the Department of Highways and Public Transportation that:

(1) the "your covered auto" shown in the Declarations has been sold or otherwise disposed of; or

(2) you have surrendered the tags and registration of the "your covered auto" shown in the Declarations.

The corresponding statutory provision, § 56–10–280, states: [A] contract or policy may be canceled within the first sixty days only under one or more of the following circumstances:

(1) A check or bank draft tendered by the insured for payment of premium is returned unpaid for insufficient funds or other reason by the insured's financial institution.

(2) The insured produces satisfactory proof from the department that he has sold or otherwise disposed of the insured vehicle or surrendered its tags and registration.

(3) The insured has secured another policy that meets the financial responsibility requirements prescribed in this chapter.

S.C.Code Ann. § 56–10–280 (Supp.1998).

Peterson contends Walker's failure to produce proof from the Highway Department that she sold or otherwise disposed of her vehicle or surrendered her tags and registration renders any attempted cancellation of the policy within sixty days of issuance invalid. While Peterson's assertions may be true, Peterson's argument ultimately fails because we find Walker cancelled the policy more than sixty days after its issuance.

West American issued Walker's policy on November 23, 1990. On February 15, 1991, Walker sought to cancel the

policy retroactive to November 23, 1990, the date of issuance. On February 25, 1991, West American issued Walker a cancellation notice and a premium refund. We hold Walker's policy effectively terminated on February 25, 1991, the date West American issued the premium refund and cancellation notice. Although the cancellation notice lists November 28, 1990, as the termination date, West American did not actually terminate the policy until it refunded Walker's unearned premium and issued the cancellation notice on February 25, 1991. Back-dating the termination date only afforded Walker a larger premium refund and did not absolve West American of any liability until the cancellation notice was issued on February 25, 1991.

Furthermore, Walker's policy permits cancellation by returning the policy to West American. Walker returned the policy to West American on February 15, 1991, more than sixty days after West American issued the policy. Therefore, the policy and corresponding statutory provision did not preclude Walker from effectively canceling her policy prior to the date of the accident.

### III. Did coverage apply because the alleged negligent entrustment occurred when the policy was in effect?

Peterson lastly argues Walker negligently entrusted her car to Galloway on November 27, 1990, which is before the purported cancellation date of November 28, 1990 used by West American. Peterson contends the date of negligent entrustment as alleged in the underlying complaint was therefore within the period the policy was in effect. Consequently, Peterson contends West American should have provided a defense to Walker and essentially asserts that West American acted in bad faith by refusing to perform its duty to defend as required by the terms of the policy.

"Where an insurer refuses to undertake the defense of an action against the insured based upon a claim within the coverage of the insurance policy, it thereby breaches the contract of insurance and is liable to the insured for all damages resulting to such insured as a direct result of such refusal and breach." *Fuller v. Eastern Fire & Cas. Ins. Co.,* 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962) (holding automobile

insurance carrier liable for damages resulting from refusal to defend an action within the coverage of the policy). Liability is predicated on the existence of a valid contract of insurance coverage. *Id.*

In addition, every contract carries with it a covenant of good faith and fair dealing in the processing of a claim under a mutually binding insurance contract. *Tadlock Painting Co. v. Maryland Cas. Co.*, 322 S.C. 498, 473 S.E.2d 52 (1996) (recognizing a cause of action for an insurance company's bad faith handling of third party benefits and holding that a bad faith claim may exist even in the absence of the breach of an express contractual provision). *See also Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 340, 306 S.E.2d 616, 619 (1983) (court recognized bad faith action in processing of first party benefits, holding "if an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action").

To establish a bad faith claim against an insurance company, the plaintiff must show: (1) the existence of a mutually binding contract of insurance between plaintiff and defendant; (2) an insurer's refusal to provide benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action and breach of an implied covenant of good faith and fair dealing arising out of the contract; and (4) causing damage to the insured. *See, e.g., Brown v. South Carolina Ins. Co.*, 284 S.C. 47, 55, 324 S.E.2d 641, 646 (Ct.App.1984) ("[I]f a mutually binding contract exists and the denial is found to be in bad faith or unreasonable, the insurer is liable for consequential losses caused by its breach of the express and implied obligations of the contract...."), *overruled on other grounds by Charleston County Sch. Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 437 S.E.2d 6 (1993) (holding bad faith is in tort, not contract). *See also Cock–N–Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1, 6, 466 S.E.2d 727, 730 (1996).

As discussed in Part II above, Walker and West American properly cancelled Walker's policy on February 25, 1991, before the accident of April 14, 1991. Accordingly, no valid insurance contract existed at the time of the automobile

accident. Therefore, Peterson failed to establish the first prong necessary to prove West American acted in bad faith by refusing to represent Walker, i.e., the existence of a mutually binding contract of insurance.

## CONCLUSION

Based on the foregoing reasons, we conclude Walker cancelled her automobile insurance policy prior to the accident involving her car on April 14, 1991. Accordingly, the decision of the trial court to grant summary judgment in favor of the insurer, West American, is

**AFFIRMED.**

CURETON and STILWELL, JJ., concur.