478 S.E.2d 74

William K. STEPHEN, Employee, Appellant,

v.

AVINS CONSTRUCTION COMPANY, Employer,
and Bituminous Insurance Company,
Carrier, Respondents.

No. 2570.

Court of Appeals of South Carolina.

Heard Sept. 11, 1996.
Decided Oct. 7, 1996.
Rehearing Denied Nov. 21, 1996.

James E. Chaffin, Jr., Columbia, for appellant.

Terri Morrill Lynch, of Sinkler & Boyd, Charleston, for respondents.

ANDERSON, Judge:

In this Workers' Compensation case, William K. Stephen (Stephen), appeals the Circuit Court's affirmance of the Workers' Compensation Commission's order holding that average weekly wages of a subcontractor should be computed based on net, as opposed to gross, earnings. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On October 31, 1991, William Stephen sustained a knee injury while employed as a subcontractor by Avins Construction Company (Avins). Stephen filed a Workers' Compensation claim. The accident was admitted and Stephen received benefits as a subcontractor and statutory employee of Avins.

Avins requested permission to discontinue the payment of temporary disability compensation on the grounds that Stephen had reached maximum medical improvement. The hearing was held on May 18, 1994. Stephen testified that, at times, he employed as many as four people within his subcontracting business. Avins paid Stephen by the job and deducted the Workers' Compensation premium from Stephen's check before paying him for his labor. Stephen admitted that the money paid to him reflected all money paid to his business, including what he had to pay other employees. The single Commissioner found that "any income paid to [Stephen] was for an entire job" and did not solely reflect his earnings. The single Commissioner further found that "[o]ut of these payments came the costs of materials, wages paid to other individuals; and other expenses related thereto." On June 30, 1994, the single Commissioner issued an order granting Avins' motion to discontinue payment of compensation and holding that Stephen's average weekly wages should be based upon his tax returns as a self-employed subcontractor, resulting in a compensation rate of $181.39.

Stephen filed an appeal to the Full Commission, which held a hearing on December 20, 1994. In an order issued January 24, 1995, the Commission affirmed the single Commissioner's order in its entirety.

Stephen then filed an appeal to the Sumter County Court of Common Pleas. On August 14, 1995, the Circuit Court affirmed the decision of the Full Commission.

## ISSUE

Did the Workers' Compensation Commission err in finding that a subcontractor's compensation rate should be determined based on his net taxable income when the subcontractor was charged Workers' Compensation premiums based on his gross earnings?

## STANDARD OF REVIEW

South Carolina Code Ann. § 1–23–380(g) (Rev.1986) of the Administrative Procedures Act provides:

(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

  (1) In violation of constitutional or statutory provisions;

  (2) In excess of the statutory authority of the agency;

  (3) Made upon unlawful procedure;

  (4) Affected by other error of law;

  (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record;  or

  (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

A court may reverse or modify an agency's decision " 'if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are ... affected by other error of law.' " *Smith v. Union Bleachery/Cone Mills*, 276 S.C. 454, 456, 280 S.E.2d 52, 53 (1981) (quoting S.C.Code Ann. § 1–23–380(g)(4) (Supp. 1980)). On appeal from the Workers' Compensation Commission, the court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Gilliam v. Woodside Mills*, 312 S.C. 523, 435 S.E.2d 872 (Ct.App.1993), *aff'd in part, remanded in part,* 319 S.C. 385, 461 S.E.2d 818 (1995). *See Lyles v. Quantum Chem. Co. (Emery),* 315 S.C. 440, 434 S.E.2d 292 (Ct.App.1993) (in reviewing decision of Workers' Compensation Commission, Court of Appeals will not set aside its findings unless they are not supported by substantial evidence or they are controlled by error of law).

In the case *sub judice*, it is conceded that the issue is a question of law for the Court. There is no factual disputation in this litigation.

### LAW/ANALYSIS

■ Stephen contends the Commission should have based his average weekly wage on his gross income of approximately $37,000 per year, resulting in a maximum compensation rate of $364.37. Stephen testified Avins deducted Workers' Compensation premiums from his paycheck based on his gross income. He argues that, as a result, the carrier should pay compensation based on the same standard. Avins argues this issue is not preserved because the single Commissioner made no specific finding of fact that Stephen's premiums were based on his gross income. This contention by Avins is rejected. The only evidence in the record is that premiums were deducted from the gross pay for labor performed. The single Commissioner, in his findings of fact, concluded "[t]he Claimant, William Stephen, was self-employed as a subcontractor on October 31, 1991, however, Avins Construction Company deducted a percentage for workers' compensation insurance and, therefore, he was their statutory employee."

### I. STATUTORY CONSTRUCTION

Pursuant to S.C.Code Ann. § 42–1–40 (Supp.1995), average weekly wage is defined as "the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury...." This statute does not specify whether "wages" refers to net or gross earnings of a business owner operating as a subcontractor.

The primary rule of statutory construction requires that legislative intent prevail if it can reasonably be discovered in language used construed in light of intended purpose. *See Whitner v. State*, Op. No. 24468 (S.C.Sup.Ct. filed July 15, 1996) (Davis Adv.Sh. No. 19 at 22); *Thomas v. State*, — S.C. ——, 465 S.E.2d 350 (1995); *Joint Legislative Committee v. Huff*, 320 S.C. 241, 464 S.E.2d 324 (1995); *Beattie v. Aiken County Dep't of Social Servs.*, 319 S.C. 449, 462 S.E.2d 276 (1995); *Glover by Cauthen v. Suitt Constr. Co.*, 318 S.C. 465, 458 S.E.2d 535 (1995); *Holley v. Mount Vernon Mills, Inc.*, 312 S.C. 320, 440 S.E.2d 373 (1994); *Utilities Constr. Co. v. Wilson*, 321 S.C. 244, 468 S.E.2d 1 (Ct.App.1996); *In the Interest of Doe*, 318 S.C. 527, 458 S.E.2d 556 (Ct.App.1995).

All rules of statutory construction are subservient to the one that legislative intent must prevail if it reasonably can be discovered in the language used. *Kiriakides v. United Artists Communications, Inc.*, 312 S.C. 271, 440 S.E.2d 364 (1994); *Dumas v. InfoSafe Corp.*, 320 S.C. 188, 463 S.E.2d 641 (Ct. App.1995).

█ If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *The Lite House, Inc. v. J.C. Roy, Co.*, 309 S.C. 50, 419 S.E.2d 817 (Ct.App.1992). Where the legislature elects not to define the term in the statute, courts will interpret the term in accord with its usual and customary meaning. *Ex Parte Adoptive Parents v. Biological Parents*, 315 S.C. 535, 446 S.E.2d 404 (1994). In construing a statute, the court looks to its language as a whole in light of its manifest purpose. *Adams v. Texfi Indus.*, 320 S.C. 213, 464 S.E.2d 109 (1995).

Words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Rowe v. Hyatt*, 321 S.C. 366, 468 S.E.2d 649 (1996); *Paschal v. State Election Comm'n*, 317 S.C. 434, 454 S.E.2d 890 (1995); *Anderson v. State Farm Mut. Auto. Ins. Co.*, 314 S.C. 140, 442 S.E.2d 179 (1994). If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning. *Paschal v. State Election Comm'n, supra.* The court must apply those terms according to their literal meanings. *Paschal v. State Election Comm'n, supra; Carolina Power & Light Co. v. City of Bennettsville*, 314 S.C. 137, 442 S.E.2d 177 (1994); *Holley v. Mount Vernon Mills, Inc.*, 312 S.C. 320, 440 S.E.2d 373 (1994). Where the terms of a relevant statute are clear, there is no room for construction. *Parsons v. Georgetown Steel*, 318 S.C. 63, 456 S.E.2d 366 (1995). The legislature's intent should be ascertained primarily from the plain language of the statute. *Whitner v. State*, Op. No. 24468 (S.C.Sup.Ct. filed July 15, 1996) (Davis Adv.Sh. No. 19 at 22); *State v. Hendriks*, 318 S.C. 562, 459 S.E.2d 520 (Ct.App.1995).

■ Construction of a statute by an agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons. *Glover by Cauthen v. Suitt Constr. Co.*, 318 S.C. 465, 458 S.E.2d 535 (1995); *Home Health Serv., Inc. v. South Carolina Tax Comm'n*, 312 S.C. 324, 440 S.E.2d 375 (1994); *Laurens County Sch. Dists. 55 and 56 v. Cox*, 308 S.C. 171, 417 S.E.2d 560 (1992); *Jasper County Tax Assessor v. Westvaco Corp.*, 305 S.C. 346, 409 S.E.2d 333 (1991). The statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers. *Rosenbaum v. S–M–S 32*, 311 S.C. 140, 427 S.E.2d 897 (1993). Statutory provisions should be given reasonable and practical construction consistent with the purpose and policy of the entire act. *Jackson, et al. v. Charleston County Sch. Dist.*, 316 S.C. 177, 447 S.E.2d 859 (1994); *Gilstrap, et al. v. South Carolina Budget and Control Bd.*, 310 S.C. 210, 423 S.E.2d 101 (1992). In interpreting a statute, the language of the statute must be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Multi–Cinema, Ltd. v. South Carolina Tax Comm'n*, 292 S.C. 411, 357 S.E.2d 6 (1987). Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law. *Bennett v. Sullivan's Island Bd. of Adjustment*, 313 S.C. 455, 438 S.E.2d 273 (Ct.App.1993).

■ Because South Carolina adopted large portions of the North Carolina Workers' Compensation legislation, we rely on North Carolina precedent in Workers' Compensation cases. *Spoone v. Newsome Chevrolet–Buick*, 309 S.C. 432, 424 S.E.2d 489 (1992); *Nolan v. Daley*, 222 S.C. 407, 73 S.E.2d 449 (1952). Decisions of North Carolina courts interpreting that state's Workers' Compensation statute are entitled to weight when South Carolina courts interpret the South Carolina Workers' Compensation Law because the South Carolina statute was fashioned after that of North Carolina. *Adams v. Texfi Indus.*, 320 S.C. 213, 464 S.E.2d 109 (1995). Here, the North Carolina statute defining average weekly wages is almost identical to our statute. North Carolina Gen.Stat. § 97–2 provides " '[a]verage weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52

weeks immediately preceding the date of the injury ... divided by 52...." N.C.Gen.Stat. § 97–2 (Supp.1995).

## II. COMPUTATION OF EARNINGS FOR SUBCONTRACTOR

The South Carolina Supreme Court has not had occasion previously to address the issue of the determination of average weekly wage for a subcontractor as a statutory employee under S.C.Code Ann. § 42–1–40 (Supp.1995). We therefore look for guidance to other jurisdictions that have addressed the issue.

Although not on point, *Wright v. Wright,* 306 S.C. 331, 411 S.E.2d 829 (Ct.App.1991), held that mileage deductions taken by an employee on his federal income tax form are not includable in the employee's income for the purpose of computing Workers' Compensation benefits. In *Wright,* this Court reversed the Commission's finding that Wright's income for the purposes of determining his compensation rate included his net income and monies derived from Wright's mileage deduction on his federal income tax return.

Wright was a self-employed heating and air conditioning contractor, whose brother was one of his employees. He used his own truck primarily for business and used it to carry his tools. General Heating and Air Conditioning, Inc., contracted with Wright to install heating units in an apartment complex in Charlotte, North Carolina. General Heating paid Wright $85 for each unit installed but did not compensate him for mileage and/or hotel expense. Initially, both Wright and his employee brother, who lived in Easley, South Carolina, stayed in a hotel two or three nights a week while working in Charlotte, but resorted to commuting from Charlotte to Easley each day in order to save money. On March 15, 1988, while driving home to Easley from Charlotte and before dropping off his brother, Wright had an accident attempting to avoid an animal.

The parties stipulated that Wright was covered under the Workers' Compensation law. The Commission found Wright's income for compensation purposes was $14,060.00 per year. This sum included Wright's net income in 1987 of $8,366.00

and $5,694.00 derived from Wright's mileage deduction on his federal income tax return.

One of the issues involved on appeal was whether the Court erred in awarding Wright compensation for his mileage deduction on his federal income tax return. This Court found the Commissioner erred in including the mileage deduction as part of Wright's income.

According to *Wright,* mileage reimbursements are generally not included in wages. On his federal income tax return, Wright deducted business expenses, including hotels, meals, tools, classes, and insurance. He also deducted mileage on the same form. The Court found that the mileage deduction was no different from the other expenses of doing business and, therefore, should not have been included as part of Wright's income for the purpose of computing Workers' Compensation benefits.

Because *Wright* is not directly on point, it provides this Court with little guidance when determining whether a subcontractor's compensation rate should be computed based on his net, as opposed to gross, earnings.

Adverting to other jurisdictions, our research reveals no case on all fours with the case at bar.

Examining the methodology used in determining earnings for Workers' Compensation purposes, the North Carolina Court of Appeals, in *Baldwin v. Piedmont Woodyards, Inc.,* 58 N.C.App. 602, 293 S.E.2d 814 (1982), held that expenses incurred in producing revenue should be deducted from that which the employee received from the employer. The *Baldwin* court further found that depreciation on business equipment, interest on business debts, and the purchase price of a saw should have been included as business expenses.

Baldwin was employed by Piedmont Woodyards when he was killed in a work-related accident. Baldwin was not paid a salary or wages, but received a certain amount for each cord of pulpwood delivered to Piedmont Woodyards. He owned a truck and other equipment which he used in his business of cutting and preparing pulpwood for sale.

The Deputy Commissioner found that the money paid in 1978 by Piedmont to Baldwin for pulpwood was the sum upon

which his average weekly wage would be calculated in determining the compensation to be paid to Baldwin's widow. The Deputy Commissioner did not deduct from the money paid to Baldwin any of his expenses in producing the pulpwood.

Striking the Deputy Commissioner's award, the Full Commission calculated Baldwin's average weekly wages by deducting from the sum he received from Piedmont certain expenses he had incurred in producing the pulpwood, including insurance and license plates for his truck, gas and oil for his truck, repairs to his equipment, and the purchase price of supplies. The Full Commission did not deduct depreciation on Baldwin's truck and loader, interest charges on business debts, or the purchase price of a saw from Baldwin's gross receipts in calculating his average weekly wages.

The issue on appeal involved the correctness of the determination of Baldwin's earnings in setting the amount of Workers' Compensation to be paid to Baldwin's widow. The court agreed "with the Full Commission that by the method it used in determining income from Piedmont, expenses incurred in producing revenue should be deducted." *Baldwin,* 293 S.E.2d 814, 816. However, the court further held that depreciation on business equipment, interest on business debts, and the purchase price of a saw should have been included as business expenses.

The Florida Court of Appeals addressed the issue of business expenses in *Florida Timber Prods. v. Williams,* 459 So.2d 422 (Fla.Dist.Ct.App.1984). Williams was an independent contractor who ran a logging crew and sold timber to Florida Timber. Prior to the accident, he elected to secure Workers' Compensation coverage for himself and obtained this insurance through Florida Timber. Williams furnished all of the equipment, labor, fuel, and other costs necessary to get his timber out of the woods and to the mill. He had legal title to all of his equipment, although he still owed money on some equipment which he purchased from Florida Timber. Williams agreed to make payments of $150 per week for the equipment he was purchasing, provided he produced enough wood and made enough money to be able to afford that amount. If for some reason Williams had a bad week, Florida Timber would deduct some lesser amount or nothing at all

from his check. During the thirteen weeks prior to his accident, Williams paid an average of only $29 per week on the equipment.

In defending the claim before the Deputy Commissioner, Florida Timber urged that for purposes of calculating the average weekly wage, the reasonable value of the use of Williams' equipment should be considered a business expense and should be deducted from his gross weekly earnings. In the Deputy Commissioner's order, she ruled that only the actual proven business expenses during the thirteen week period preceding the accident should be deducted from Williams' gross income in order to arrive at the average weekly wage.

The Florida Appeals Court stated:

The lease or rental of business equipment from the employer or any other person is a business expense. The purchase of equipment on a deferred payment basis or the repayment of a loan to purchase equipment is not a business expense but a capital investment which under standard accounting procedures is depreciated over the reasonable life of the equipment. The reasonable rental value of the equipment is not a proper basis for determining the expense to be allotted to the equipment. The reasonable depreciation attributable to all equipment, both owned and being purchased by the claimant for the 13–week period prior to claimant's accident, is the proper business expense to be attributed to the equipment. In addition, other expenses for the 13–week period including labor, fuel and repair bills, insurance and other various business expenses during the 13–week period prior to the accident should be deducted from claimant's gross receipts in order to arrive at the proper average weekly wage.

*Florida Timber Prods.*, 459 So.2d at 423.

Some jurisdictions have adopted a more liberal approach in calculating "earnings of the injured employee." In *Little Suwannee Lumber Co. v. Fitzgerald,* 172 Ga.App. 144, 322 S.E.2d 347 (1984), the Georgia Court of Appeals held that all payments an employer makes to an employee should be counted as wages for the purpose of fixing Workers' Compensation benefits. Fitzgerald, an independent contractor who

sold pulpwood to Little Suwannee Lumber Company, was injured while attempting to fell a tree. Little Suwannee regularly deducted Workers' Compensation premiums from the payments it made to Fitzgerald, thus entitling him to coverage. The issue then became how to determine the amount of benefits Fitzgerald was to receive. The Georgia court rejected the employer's argument that "production costs" should have been deducted from the independent contractor's income when calculating his average weekly wage. The court further held:

> The Georgia Workers' Compensation Act is a humanitarian measure meant to provide relief to the injured employee, and the Act should be liberally interpreted by the courts to carry out that purpose. *Atha v. Jackson Atlanta, Inc.*, 159 Ga.App. 433, 436, 283 S.E.2d 654 (1981). In light of that purpose and given the circumstances of the instant case, we cannot countenance an interpretation of the Act which will result in a reduction of benefits to recipients.

> Appellant further contends that there is a difference between "fees" and "wages" as those terms relate to the Act; fees being the gross amounts appellant paid appellee, and wages being the net amounts appellee retained for himself after expenses. The Act does not specifically define either term, leaving us to apply ordinary meanings in everyday usage. Webster's 7th New Collegiate Dictionary defines "wages" as "a payment, usually of money for labor or services usually according to contract and on an hourly, daily or piecework basis ... especially for physical labor." "Fee" is offered as a synonym; it "applies to the price asked or paid for services of a physician, lawyer, artist or other professional." Clearly, it is not mandated by definition or otherwise that one make any deductions before calculating the pulpwooder's wages, particularly in view of the fact that appellant deducted the workers' compensation premiums from his gross, rather than net, receipts. It appearing that appellant made an election, this court will not rescue it from its decision.

*Little Suwannee*, 322 S.E.2d at 348–49. We decline to follow the holding in *Little Suwannee*.

Difficulties are inherent in using gross pay for the purpose of determining the "earnings of the injured employee." A plethora of business expenses may be encapsulated within the

gross pay received. Examples of expenses not included in computing the earnings of a covered person are automobile allowances [*Bosworth v. 7–Up Distrib. Co.*, [4 Va.App. 161] 355 S.E.2d 339 (1987)]; mileage expenses [*Wright v. Wright*, 306 S.C. 331, 411 S.E.2d 829 (Ct.App.1991)]; equipment rentals [*Dickerson, Inc., et al. v. McCleary*, 498 So.2d 651, 652 (Fla. Dist.Ct.App.1986) ("[W]hen an employee furnishes both services and equipment, and the furnishing of equipment is a specified and substantial portion of the contract, the amount legally attributable to rental of the equipment should not be included in determining the employee's average weekly wage.")], [*Florida Timber Prods. v. Williams*, 459 So.2d 422 (Fla.Dist.Ct.App.1984) (lease or rental of business equipment from employer or any other person is a business expense not included in determining average weekly wage; reasonable depreciation attributable to all equipment, both owned and being purchased by claimant for 13–week period prior to claimant's accident, is the proper business expense to be attributable to the equipment)]; labor, fuel, repair bills, and insurance [*Florida Timber Prods. v. Williams, supra*]; and depreciation on business equipment, interest on business debts, and the purchase price of a saw [*Baldwin v. Piedmont Woodyards, Inc.*, [58 N.C.App. 602] 293 S.E.2d 814 (1982) (expenses incurred in producing revenue should be deducted)].

On his income tax form, Stephen deducted the following business expenses: advertising ($25), car and truck expenses ($6492), legal and professional services ($124), office expenses ($50), supplies ($520), travel ($480), meals and entertainment ($2000), utilities ($260), wages ($7500), and materials ($5869).

The quiddity of Stephen's contention to support a calculation based on gross pay is the deduction of Workers' Compensation premiums from his gross pay by Avins. Facially, this would seem to justify the use of gross pay rather than net pay. However, we reject this argument and hold that reimbursements received by Stephen cannot be the basis for a computation of his "earnings." The Workers' Compensation Commission was correct in calculating the "earnings" of Stephen by using Stephen's "average weekly wages [of $272.09], based upon his tax returns as a self-employed subcontractor, ... resulting in a compensation rate of $181.39." Stephen's gross receipts totaled $37,070.00. His net profits totaled $14,150.00.

Stephen's net profit, $14,150.00, divided by 52 (number of weeks in a year) totals $272.09. Two-thirds of $272.09 equals $181.39.

There is substantial evidence in the record to support a finding that Stephen's average weekly wage and compensation rate should be based upon his net earnings, Stephen's gross earnings having included wages paid to other employees and various business deductions.

## CONCLUSION

We hold that a subcontractor's compensation rate should be determined based on his net taxable income even though the subcontractor was charged Workers' Compensation premiums based on his gross earnings. In our view, the statutory language, "earnings of the injured employee," means the actual sum paid to the employee as his wages, not the totality of payments including reimbursements. Reimbursements do not equate with the statutory language of "earnings." Accordingly, we affirm the ruling of the Workers' Compensation Commission that Stephen's average weekly wage should be computed based on his net, as opposed to his gross, earnings.

**AFFIRMED.**

CURETON and HOWARD, JJ., concur.