543 S.E.2d 232

**Miriam PEE, Respondent,**

v.

**AVM, INC. and Arvin Industries, Inc., Appellants.**

**No. 3280.**

Court of Appeals of South Carolina.

Heard Oct. 11, 2000.
Decided Jan. 8, 2001.
Rehearing Denied March 12, 2001.

Stanford E. Lacy and Peter H. Dworjanyn, both of Collins & Lacy, of Columbia, for appellants.

Rodney C. Jernigan, Jr., of Florence, for respondent.

HOWARD, Judge:

This is a workers' compensation case, presenting the question of whether carpal tunnel syndrome is compensable under the South Carolina Workers' Compensation Act (the Act) as an injury by accident. The Workers' Compensation Commission awarded benefits to Miriam Pee, finding her carpal tunnel syndrome to be an injury by accident. The circuit court affirmed the award. We also affirm.

## FACTS/PROCEDURAL HISTORY

Miriam Pee was employed by AVM, Inc. in various capacities beginning in 1987. Each of her jobs involved the repetitive use of her hands. In 1992, Pee developed an unrelated cyst in her left wrist which was surgically removed. By the spring of 1995, she experienced tingling and numbness in both

hands, although the symptoms in her left hand and wrist were worse than in the right hand and wrist. On April 25, 1995, Pee was diagnosed with carpal tunnel syndrome in both wrists. The employer was notified of her physical condition. On June 16, 1995, Pee underwent "left Carpal Tunnel Release" surgery. She was authorized to return to work at the end of July 1995.

In January 1996, Pee noticed the symptoms in her left wrist were returning, and the symptoms in her right wrist were worsening. She returned to her treating neurologist, who removed her from work beginning April 20, 1996. Surgery was recommended for her right wrist in October 1996, but has not been performed.

Pee filed her claim for workers' compensation benefits on July 21, 1995, asserting she sustained an injury by accident from repetitive trauma to both arms while employed at AVM, Inc., resulting in carpal tunnel syndrome. The employer filed a Form 51 denying the claim on the ground that Pee did not suffer an injury by accident within the meaning of the Act.

Following a hearing, the Single Commissioner found Pee sustained a compensable injury by accident to both arms and awarded benefits. The employer appealed to the Full Commission on the grounds that Pee did not prove an injury by accident and carpal tunnel syndrome should be analyzed as an occupational disease. The Full Commission affirmed the order of the Single Commissioner, adopting it in its entirety.

The employer then appealed to the circuit court, asserting the same arguments. The circuit court affirmed the order of the Full Commission. This appeal follows.

## DISCUSSION

The issue presented in this appeal is one of first impression in this State. *See Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 519, n. 1, 466 S.E.2d 357, 359, n. 1 (1996).

The question of whether a claimant asserts an "injury by accident" within the meaning of the Act is a question of law. *Creech v. Ducane Co.*, 320 S.C. 559, 467 S.E.2d 114 (Ct.App.1995). This Court may review the Commission's legal conclusion to determine if it is affected by an error of law.

*Id.;* S.C.Code Ann. § 1–23–380(A)(6) (Supp.1999). Notwithstanding the scope of review on this legal question, this Court must affirm the Commission's factual findings if they are supported by substantial evidence and not controlled by legal error. *Tiller v. Nat'l Health Care Ctr.,* 334 S.C. 333, 513 S.E.2d 843 (1999). "An appellate court may not substitute its judgment for that of an agency as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative, and substantial evidence on the record." *Id.,* at 339, 513 S.E.2d at 845. "Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached." *Id.,* at 338, 513 S.E.2d at 845 (citing *Grayson v. Carter Rhoad Furniture,* 317 S.C. 306, 454 S.E.2d 320 (1995)).

The employer argues that Pee's carpal tunnel syndrome is not an injury by accident because it is not unexpected in either cause or result, and it has no definiteness in time as to either cause or result. The employer contends that this Court should treat a claim for carpal tunnel syndrome as an occupational disease, following North Carolina law. *See McDowell v. Stilley Plywood Co.,* 210 S.C. 173, 181, 41 S.E.2d 872, 876 (1947) ("Our Workmen's Compensation Act having been fashioned to the North Carolina Workmen's Compensation Act, and practically a copy thereof, the opinions of the Supreme Court of that State construing such Act are entitled to great respect."); *Blair v. American Television and Communications, Corp.,* 124 N.C.App. 420, 477 S.E.2d 190 (1996) (treating carpal tunnel syndrome "injury by accident" as an occupational disease).

However, unlike the South Carolina Workers' Compensation Act, the North Carolina Workers' Compensation Act has been amended to include a specific provision excluding repetitive trauma cases from compensation unless they meet the definition of an occupational disease. *See* N.C. Gen.Stat. § 97–52 (1999).[1] Consequently, the decisions of the North Carolina courts are not helpful.

---

1. N.C. Gen.Stat. § 97–52 states that an "accident" may not "be construed to mean a series of events in employment, of a similar or like nature, occurring regularly, continuously, or at frequent intervals in the

The South Carolina Workers' Compensation Act does not contain a provision categorizing a condition resulting from repetitive activity or trauma, such as carpal tunnel syndrome, as a disease or an injury. There are some characteristics which are more easily analyzed in a disease setting. For example, carpal tunnel syndrome typically occurs gradually, rather than as a result of one traumatic event. Other characteristics render it more readily identifiable as an injury by accident, such as the fact that it is often attributed to repetitive mechanical motion, described as small traumatic events.

If carpal tunnel syndrome is treated as an occupational disease, then the claimant has the burden of proving that it is "caused by a hazard recognized as peculiar to a particular trade, process, occupation or employment as a direct result of continuous exposure to the normal working conditions thereof." S.C.Code Ann. § 42–11–10 (1985); *Mohasco Corp., Dixiana Mill Div. v. Rising*, 292 S.C. 489, 357 S.E.2d 456 (1987). Of course, if treated as an injury by accident, the claimant must still establish that the injury arises out of and in the course of the employment. S.C.Code Ann. § 42–1–160 (Supp. 1999).

After careful consideration of the statutes and case law, we conclude there is no error in the Commission's treatment of carpal tunnel syndrome, where factually supported, as an injury by accident.

■■■ We begin our analysis by reviewing the occupational disease definition found in the Act, keeping in mind that a firmly rooted rule of statutory construction in South Carolina is that words should be given their plain and ordinary meaning. "In the interpretation of statutes, our sole function is to determine and, within constitutional limits, give effect to the intention of the legislature, with reference to the meaning of the language used and the subject matter and purpose of the statute." *State v. Ramsey*, 311 S.C. 555, 561, 430 S.E.2d 511, 515 (1993). "Where the statute's language is plain and unam-

course of employment, over extended periods of time, whether such events may or may not be attributable to the fault of the employer and disease attributable to such causes shall be compensable only if culminating in an occupational disease mentioned and compensable under this Article...."

biguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). The legislature is presumed to have fully understood the meaning of the words used in a statute and, unless this meaning is vague or indefinite, intended to use them in their ordinary and common meaning or in their well-defined legal sense. *Powers v. Fidelity & Deposit Co.*, 180 S.C. 501, 186 S.E. 523 (1936). Where the legislature chooses not to define a term in the statute, courts should interpret the term in accordance with its usual and customary meaning. *Adoptive Parents v. Biological Parents*, 315 S.C. 535, 543, 446 S.E.2d 404, 409 (1994).

In South Carolina, an occupational disease is defined as a disease which the employee is exposed to in the workplace.[2] As other courts have recognized in construing comparable provisions, the definition of an occupational disease is incomplete, and focuses on causation while assuming the claimant

---

2. § 42–11–10. "Occupational disease" defined.

The words "occupational disease" mean a disease arising out of and in the course of employment which is due to hazards in excess of those ordinarily incident to employment and is peculiar to the occupation in which the employee is engaged. A disease shall be deemed an occupational disease only if caused by a hazard recognized as peculiar to a particular trade, process, occupation or employment as a direct result of continuous exposure to the normal working conditions thereof.
No disease shall be deemed an occupational disease when:
(1) It does not result directly and naturally from exposure in this State to the hazards peculiar to the particular employment;
(2) It results from exposure to outside climatic conditions;
(3) It is a contagious disease resulting from exposure to fellow employees or from a hazard to which the workman would have been equally exposed outside of his employment;
(4) It is one of the ordinary diseases of life to which the general public is equally exposed, unless such disease follows as a complication and a natural incident of an occupational disease or unless there is a constant exposure peculiar to the occupation itself which makes such disease a hazard inherent in such occupation;
(5) It is any disease of the cardiac, pulmonary or circulatory system not resulting directly from abnormal external gaseous pressure exerted upon the body or the natural entrance into the body through the skin or natural orifices thereof of foreign organic or inorganic matter under circumstances peculiar to the employment and the processes utilized therein; or
(6) It is any chronic disease of the skeletal joints.
S.C.Code Ann. § 42–11–10 (1985).

suffers from a disease. *See Duvall v. ICI Americas, Inc.*, 621 N.E.2d 1122, 1126 (Ind.App.Ct.1993).

As the Iowa Supreme Court pointed out in its analysis of a comparable occupational disease provision, none of the commonly understood meanings for the word "disease" trace the cause of disease to a trauma. *See Noble v. Lamoni Prods.*, 512 N.W.2d 290, 295 (Iowa 1994) (affirming carpal tunnel syndrome in claimant's case was not caused by "an invasion of her body by outside agent but by external traumatic forces," and was properly characterized as an injury, not a disease); *see also Duvall,* 621 N.E.2d at 1126 ("A trauma is defined as a 'wound, especially one produced by sudden physical injury'.... Similarly, a 'traumatism' is an 'injury' or a 'wound produced by injury; trauma.' "); *Luttrell v. Industrial Comm'n,* 154 Ill.App.3d 943, 107 Ill.Dec. 620, 507 N.E.2d 533, 542 (1987) ("[I]njury has its origin in a specific, identifiable trauma or physical occurrence, or, in the case of repetitive trauma, a series of such occurrences. A disease, on the other hand, originates from a source that is neither traumatic nor physical . . . .").

As the *Duvall* court noted, the term " 'exposure' indicates a passive relationship between the worker and his work environment rather than an event or occurrence, or series of occurrences, which constitute injury under the Workers' Compensation Act." 621 N.E.2d at 1125. The claimant in that case was found by the Workers' Compensation Board to have carpal tunnel syndrome caused by repetitive trauma resulting from the ordinary conditions of her employment. On appeal, the court concluded that the claimant's carpal tunnel syndrome did not result from "exposure" to workplace conditions, but from hand and wrist mechanics associated with work on the production line. As the court succinctly stated, "[claimant's] carpal tunnel syndrome did not result from where she worked but from the work she did." *Id.* at 1126. Noting that compensation for injury in Indiana requires "injury by accident arising out of and in the course of the employment and does not include disease in any form except as it results from injury," Ind.Code § 22–3–6–1(e) (Supp.1999), the court concluded claimant's carpal tunnel syndrome was properly treat-

ed as an injury by accident, rather than as an occupational disease.[3]

We see no reason why, if factually supported, carpal tunnel syndrome cannot be compensable as an injury by accident under our Act and existing case law. To be compensable under the Act, the injury must be an "injury by accident arising out of and in the course of the employment." S.C.Code Ann. § 42–1–160 (Supp.1999). To determine whether an "injury by accident" has been established, the focus is on the injury itself, and not on some specific event. *Creech,* 320 S.C. at 563, 467 S.E.2d at 116. " '[A]ccident' means an unlooked for and untoward event which is not expected or designed by the person who suffers the injury." *Id.* It is an event "not within one's foresight and expectation and may be due to purely accidental causes or to oversight and negligence, carelessness, fatigue, or miscalculation of the effects of voluntary action." *Linnen v. Beaufort County Sheriff's Dep't,* 305 S.C. 341, 344, 408 S.E.2d 248, 250 (Ct.App.1991). A slip, fall, or other fortuitous event or accident in the cause of the injury is not required. *Creech,* 320 S.C. at 563, 467 S.E.2d at 116. Proof of a "causative event" is not required to establish "injury by accident." *Sigmon v. Dayco Corp.,* 316 S.C. 260, 449 S.E.2d 497 (Ct.App.1994). The unexpected result or industrial injury is considered the compensable accident. *Creech,* 320 S.C. at 563, 467 S.E.2d at 116.

The employer contends that the result of the repetitive action in the workplace is not an "injury by accident" because it is not unexpected. However, there is no finding by the Commission that Pee knew she would develop carpal tunnel

---

3. The Indiana view of injury is substantially similar to that of South Carolina. To be compensable as an injury under Indiana law, "a claimant is no longer required to prove that his injury arose from an accident as a specific, identifiable event; rather, an employee's injury is considered 'accidental' when it is the unexpected consequence of the usual exertion or routine performance of the particular employee's duties. Either an accidental cause or an unexpected result will support a claim." *Duvall,* 621 N.E.2d at 1126, (citing *Evans v. Yankeetown Dock Corp.,* 491 N.E.2d 969 (Ind.1986)). As stated in the body of this opinion, under South Carolina law proof of a causative event is not required. The unexpected result or industrial injury itself is considered the compensable accident. *Stokes v. First Nat'l Bank,* 306 S.C. 46, 410 S.E.2d 248 (1991).

syndrome if she executed repetitive movements with her hands and wrists. There is no evidence that repetitive movements such as those made by Pee always result in carpal tunnel syndrome. Furthermore, the Commission concluded that the result was not expected, and that fact is supported by the record.

The employer has confused the symptoms with the injury. The testimony reveals that Pee's carpal tunnel syndrome was a condition produced by compression of the median nerve as it travels through the carpal tunnel at the wrist, resulting in symptoms of tingling, pain, and weakness. Dr. Healy, Pee's treating physician, testified that carpal tunnel syndrome results, as a rule, from repetitive stress as opposed to a single traumatic event.[4] In Pee's case, Dr. Healy opined her carpal tunnel syndrome was work related. Although Pee experienced her symptoms for some time during her repetitive work activity, there is no indication she expected or intended the resulting condition of median nerve compression. *See Linnen*, 305 S.C. at 344, 408 S.E.2d at 250 ("accident ... may be due to oversight and negligence, carelessness, fatigue, *or miscalculation of the effects of voluntary action* ") (emphasis added).

Next, the employer asserts that Pee's carpal tunnel syndrome occurred gradually, having no "definiteness of time." To support the contention that an injury by accident must have a definitive time of occurrence, the employer asserts that no South Carolina case has found a claimant's condition to be compensable as an injury by accident without a definite time of occurrence. Furthermore, the employer argues that in cases involving the gradual onset of injury, such as *Stokes v. First National Bank*, 306 S.C. 46, 410 S.E.2d 248 (1991) (involving a stress-related nervous breakdown), and *Grayson v. Gulf Oil Co.*, 292 S.C. 528, 357 S.E.2d 479 (Ct.App.1987) (involving hypersensitivity to normal environmental factors from long term exposure to petroleum fumes), the forces at

---

4. Carpal tunnel syndrome can also be caused by "a variety of factors, including age, gender, weight, acute trauma, rheumatoid arthritis, and other inflammatory diseases, pregnancy, diabetes, tumors, hormonal factors, and congenital defects." 14 A.L.R.5th 1, 16, n. 3 (1993) (citing 8 Am.Jur. Proof of Facts 3d 1, *Carpal Tunnel Syndrome* § 6 (1990)).

work resulted in one catastrophic event, which was the single, traumatically induced injury.

We reject this argument. An injury need only be unexpected to be considered an injury by accident. *Creech,* 320 S.C. at 559, 467 S.E.2d at 114. There is no requirement in the Act that it be distinct, as opposed to gradual. To impose such a requirement would refocus the inquiry on a discrete event, as opposed to the injury itself, in violation of *Creech,* 320 S.C. at 559, 467 S.E.2d at 114, and *Sigmon,* 316 S.C. at 260, 449 S.E.2d at 497. In *Mauldin v. Dyna–Color/Jack Rabbit,* 308 S.C. 18, 416 S.E.2d 639 (1992), our supreme court ruled that the two-year limitation period provided in section 42–15–40 begins to run from the date the claimant first discovers the compensable injury. It is this discrete event which provides the necessary certainty as to time.

For the foregoing reasons, we conclude the Commission did not err in treating Pee's carpal tunnel syndrome as an injury by accident. The substantial evidence in the record supports the Commission's decision, and the circuit court correctly affirmed the award.

**AFFIRMED.**

STILWELL, and SHULER, JJ., concur.