545 S.E.2d 833

**Ralph SCHURLKNIGHT, Appellant,**

v.

**CITY OF NORTH CHARLESTON, and State Accident Fund, Respondents.**

No. 3324.

Court of Appeals of South Carolina.

Heard Oct. 10, 2000.
Decided March 26, 2001.
Rehearing Denied May 23, 2001.

Thomas M. White, of Steinberg Law Firm, of Goose Creek, for appellant.

Andrew F. Haselden, of Howser, Newman & Besley; and General Counsel Rose Mary McGregor, of State Accident Fund, both of Columbia, for respondents.

SHULER, Judge:

In a decision affirmed by the workers' compensation commission and the circuit court, the single commissioner found Ralph Schurlknight's claim for benefits barred by the statute of limitations. Schurlknight appeals. We affirm.

## FACTS

Schurlknight worked as a fireman for the City of North Charleston from 1973 until August of 1997.[1] Between 1976 and 1997, Schurlknight served as a captain and rode in the passenger seat of the fire truck between five and fifteen times per week. On each call, Schurlknight was exposed to the sirens and air horns which were several feet from his seat. Schurlknight would leave his window down to listen for traffic and other emergency vehicles, and turned the radio up to a volume that could be heard over the sirens and horns.

Schurlknight had a hearing test performed on April 14, 1995 as part of a routine physical. Dr. Weissglass, Schurlknight's physician, reported Schurlknight had "some hearing loss that fits the pattern of noise induced." Schurlknight testified he was told he had a "slight, slight hearing impairment" which the physician would monitor each year. Prior to the physical, Schurlknight had not noticed any hearing loss. Dr. Weissglass recommended Schurlknight wear hearing protection and referred him to the Charleston Speech and Hearing Center (the Center).

Schurlknight received counseling at the Center regarding the adverse communication effects of his hearing impairment and was subsequently referred to vocational rehabilitation services for funding assistance for hearing aids. The Center's report, which was mailed to Schurlknight on May 3, 1995, indicated that Schurlknight's hearing loss was moderate and imposed a communication handicap. Dr. Fenwick, who reported on Schurlknight's condition, described "a history of bilateral hearing loss which has slowly progressed over the last several years." On May 10, 1995, Dr. Fenwick recommended Schurlknight obtain annual audiograms concluding the "hearing loss will likely continue to worsen and [Schurlknight] may ultimately need hearing aids in the future, although I would expect that this would be 10 years away."

Schurlknight continued his work as a fireman and did not file a claim as he was still able to perform his job and he believed Dr. Weissglass would monitor his hearing at his annual physicals.

Schurlknight had another physical and hearing test performed in February of 1996, in anticipation of the North

---

1. Schurlknight worked for the North Charleston District until their merger with the City of North Charleston in approximately 1996.

Charleston District's merger with the City of North Charleston. Dr. Weissglass again performed the physical and the hearing test and, according to Schurlknight, described his hearing loss as "minor, go back to work." Dr. Weissglass reported "[Schurlknight] needs protective gear for hearing and annual audiograms." Schurlknight testified that he did not wear his hearing protection because he could not hear the radio transmission while in the fire truck if he wore ear plugs. Schurlknight continued to work until August of 1997, when he left the fire department due to unrelated medical problems.[2] Schurlknight has not worked since 1997.

After leaving the fire department, Schurlknight noticed more severe hearing loss. In December of 1997, Dr. Fenwick performed another audiogram. Schurlknight's understanding of the results is that his hearing loss is severe. Dr. Fenwick reported Schurlknight's loss as 22.5% to the right ear and 37.5% to the left ear resulting in a binaural hearing impairment of 12.5%, describing the loss as "mild to moderately—severe."

Schurlknight filed his Form 50 claim for benefits on March 6, 1998. The City of North Charleston and the State Accident Fund filed a Form 51 denying the claim based, *inter alia*, on the statute of limitations. The single commissioner denied the claim, finding it barred by the two year statute of limitations. The single commissioner concluded Schurlknight "knew that he had a workers' compensation claim for a hearing loss at least by May 1995."

Schurlknight appealed to the full commission arguing essentially four issues: 1) Schurlknight was not aware he had a compensable claim until much later than May of 1995; 2) Schurlknight timely filed his claim as he continued to incur damage until his last exposure in August of 1997 and it was thus not barred by the statute of limitations; 3) Schurlknight suffered from permanent partial disability; and 4) Schurlknight's hearing loss is causally related to his employment.

In a two-to-one decision, the full commission affirmed the single commissioner. The dissenting commissioner concluded, *inter alia*, the City of North Charleston and the State Acci-

---

2. Schurlknight suffered from cluster migraine headaches.

dent Fund were estopped from denying the claim as they gave Schurlknight sufficient reason to believe they would provide yearly testing and take care of his hearing problems.

Schurlknight appealed to the circuit court raising the same issues raised to the full commission. The circuit court concluded the issues were: 1) the statute of limitations; and 2) estoppel. Concluding the discovery rule applied, the circuit court affirmed the commission's ruling that the statute of limitations barred the claim. The circuit court did not rule on the estoppel issue. This appeal follows.

## STANDARD OF REVIEW

■■ The Administrative Procedures Act establishes the standard of review for decisions by the South Carolina Workers' Compensation Commission. *Lark v. Bi–Lo,* 276 S.C. 130, 276 S.E.2d 304 (1981). In an appeal from the commission, this Court may not substitute its judgment for that of the commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. S.C.Code Ann. § 1–23–380(A)(6) (Supp.2000); *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996); *see also Smith v. Union Bleachery/Cone Mills,* 276 S.C. 454, 456, 280 S.E.2d 52, 53 (1981) (court may reverse or modify agency's decision "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are ... affected by other error of law."); *Lyles v. Quantum Chem. Co.,* 315 S.C. 440, 434 S.E.2d 292 (Ct.App.1993) (in reviewing decision of workers' compensation commission, [the] court of appeals will not set aside its findings unless they are not supported by substantial evidence or they are controlled by error of law).

## LAW/ANALYSIS

■■ Schurlknight argues the commission erred in barring his claim based upon the statute of limitations. We disagree. South Carolina Code Annotated Section 42–15–40 provides in part:

The right to compensation under this title is barred unless a claim is filed with the commission within two years after an

accident, or if death resulted from accident, within two years of the date of death.

S.C.Code Ann. § 42–15–40 (Supp.2000). In *Mauldin v. Dyna–Color/Jack Rabbit*, 308 S.C. 18, 416 S.E.2d 639 (1992), the supreme court held the discovery rule applied in workers' compensation actions. Under the discovery rule, the statute would begin to run from the date Schurlknight either knew or should have known of his compensable injury.[3] *Id.* The commission, adopting the single commissioner's findings, concluded Schurlknight knew he had a claim for a hearing loss by May of 1995.

Schurlknight's medical records indicate that in May of 1995, he was counseled at the Center in regard to the "adverse communication effects of his hearing impairment" and was "referred to vocational rehabilitation for funding assistance for hearing aids." Schurlknight's medical records also indicate that his hearing loss was moderate and imposed a communications handicap." We agree with the commission that Schurlknight knew or should have known of his compensable injury by May of 1995. Even assuming that Schurlknight was unaware of his compensable injury by May of 1995, Schurlknight certainly knew or should have known of his compensable injury after his audiogram in February of 1996.[4] Accordingly,

---

3. Our supreme court further explained the discovery rule in *Dean v. Ruscon Corp.,*:

> According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered. The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct. We have interpreted the "exercise of reasonable diligence" to mean that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist. Moreover, the fact that the injured party may not comprehend the full extent of the damage is immaterial.

> *Dean,* 321 S.C. 360, 363–64, 468 S.E.2d 645, 647 (1996) (citations omitted).

4. Defense Counsel: And you were again told that you had a hearing loss. I believe you said a slight hearing loss.

Schurlknight: Slight hearing loss but that they would monitor it.

Schurlknight's Form 50, filed on March 6, 1998, is barred by the two-year statute of limitations.

■ Schurlknight also argues that in repetitive trauma claims to which the limitation period for accidents applies, the date on which the claim occurs is the last date of exposure to the repetitive trauma. That is, Schurlknight proposes that the statute of limitations should begin to run only after the date of Schurlknight's last exposure to his noisy environment. We disagree.

This Court is bound by the holding in *Mauldin* and must apply the discovery rule. We are unaware of any case overruling the supreme court's ruling in *Mauldin.* Additionally, in *Pee v. AVM Inc.*, 344 S.C. 162, 543 S.E.2d 232 (Ct.App.2001), this Court stated in dicta that *Mauldin* is applicable to repetitive trauma injuries:

> [O]ur supreme court ruled that the two-year limitation provided in section 42–15–40 begins to run from the date the claimant first discovers the compensable injury. It is this discrete event which provides the necessary certainty as to time.

*Pee,* 344 S.C. at 172, 543 S.E.2d at 237.

■ Schurlknight also argues because he was led to believe he need not take action to pursue his claim, the City of North Charleston should be estopped from asserting the statute of limitations. The issue of estoppel was not ruled upon by the circuit court. In addition, Schurlknight did not move to alter or amend the order of the circuit court for failure to consider the issue under Rule 59(e), SCRCP. Therefore, this issue is not preserved for appeal. *See Talley v. S.C. Higher Educ. Tuition Grants Comm'n,* 289 S.C. 483, 347 S.E.2d 99 (1986) (an issue raised to but not ruled on by the trial court is not

---

Q: And at that visit on February 29 th of 1996, Dr. Weissglass also told you that your hearing loss was probably caused from being around sirens and air horns for 20 years?
A: Yes, sir.
Q: So, in February of '96 you were aware that you had a hearing loss?
A: Yes, sir.
Q: And that it was probably caused by loud noises on the job?
A: Right.

preserved unless the complaining party moves to amend the judgment pursuant to Rule 59(e), SCRCP).

For the foregoing reasons, the order on appeal is

**AFFIRMED.**

STILWELL, J., concurs.

HOWARD, J., concurs in a separate opinion.

HOWARD, Judge, concurring:

I concur in the reasoning and decision of the majority opinion. I write separately to clarify what I believe to be the distinction between the date of discovery of a compensable injury in *Mauldin v. Dyna–Color/Jack Rabbit*, 308 S.C. 18, 416 S.E.2d 639 (1992), and the date of discovery of a compensable injury in this case.

In *Mauldin*, the claimant first injured her knee on January 2, 1985. She reported it and received emergency room treatment paid for by her employer/worker's compensation carrier. She was diagnosed with a knee sprain, and the injury was handled as a "medical only" claim, minor injury, and was then closed. *Id.* at 20, 416 S.E.2d at 640. During the next two years, she experienced intermittent swelling, which was diagnosed by her family physician as arthritis. *Id.* It was not until October 1987 that she experienced swelling which did not subside, at which time she was first diagnosed with a torn medial meniscus in the knee. Our supreme court ruled that under those circumstances, the claimant first discovered a compensable injury in October 1987 with the diagnosis of torn medial meniscus.

In contrast, Schurlknight was first told he had a permanent hearing loss significant enough to require a hearing aid in May 1995. By its very nature, this condition was not transient or minor. Furthermore, he was advised to protect his ears when the siren was blaring, which he felt he could not do without missing radio transmissions or traffic indicators. Therefore, under his own version of his job duties, this injury adversely impacted Schurlknight's ability to perform as a fireman. Consequently, facts putting a reasonable claimant on notice of a

compensable injury were available to Schurlknight in May 1995.

Although I agree that the above resolution is mandated by our Workers' Compensation Act and caselaw, it is a harsh rule to apply in a repetitive trauma case. *See Pee v. AVM, Inc.,* 344 S.C. 162, 543 S.E.2d 232 (Ct.App.2001). The employee is punished for continuing to perform the job during the early stages of the injury by denial of the right to make a legitimate claim for benefits when the injury finally renders the claimant unable to perform the job. Furthermore, it is likely to undermine the employee/employer relationship by requiring the employee to file an early claim even though he or she is still able and ready to work.

Repetitive trauma cases fall in between the traditional concept of "injury by accident" and "occupational disease." They have some characteristics of each. *See Pee,* 344 S.C. 162, 543 S.E.2d 232 (Ct.App.2001). Other states have addressed this problem by ruling in repetitive trauma cases that the statutory period for filing a claim begins to run at such time as the employee is no longer able to work at his job. *See, e.g., Ross v. Oxford Paper Co.,* 363 A.2d 712, 714 (Me.1976); *Barker v. Home–Crest Corp.,* 805 S.W.2d 373, 373–74 (Tenn. 1991); 3 Arthur Larson & Lex K. Larson *Larson's Workers' Compensation Law* § 50.05 (2000). However, without further guidance from our supreme court, *Mauldin* cannot be extended to reach this result. Of course, the clearest resolution would be through legislative action that comprehensively addresses repetitive trauma injuries such as that involved here and carpal tunnel syndrome as found in *Pee.*